**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rene Ellis, Jr., | No. CV-20-00139-TUC-JAS (EJM) |
| Petitioner, | **REPORT AND** |
| v. | **RECOMMENDATION** |
| Barbara Von Blanckensee, | |
| Respondent. | |

Pending before the Court is Petitioner Rene Ellis, Jr.'s pro se Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody ("Petition") (Doc. 1). Respondent filed a Response (Doc. 13), and Petitioner did not file a reply.

As an initial matter, the Court notes that the proper respondent in an action for habeas corpus is the Petitioner's custodian, who, at the time this action was filed, was Barbara Von Blanckensee, warden of United States Penitentiary—Tucson. *See* 28 U.S.C. § 2242; *Rumsfeld v. Padilla*, 542 U.S. 426, 435–36 (2004). The Court takes judicial notice that Petitioner is currently incarcerated at USP—Thomson, in Illinois.[1] The Court will

---

[1] The undersigned notes that Petitioner has failed to file and serve a notice of address change as required by LRCiv 83.3(d) and this Court's Service Order (Doc. 7). The undersigned used the Bureau of Prisons ("BOP") Inmate Locator to determine that Petitioner is currently incarcerated at USP—Thomson.

Pursuant to the Court's Service Order (Doc. 7), failure to comply with the Order, including failure to notify the Court of a change of address, may result in dismissal of the action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260–61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with an order of the Court). The undersigned submits that this action is therefore appropriate for dismissal for failure to prosecute (LRCiv 41.1), failure to notify the Court of address change (LRCiv 83.3), and failure to comply with an Order of the Court.

For the reasons explained below, the undersigned also finds that dismissal is

1   substitute the warden of USP—Thomson, Andrew Ciolli, as Respondent pursuant to Rule

2   25(d) of the Federal Rules of Civil Procedure.

3        Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure, this matter

4   was referred to Magistrate Judge Markovich for a Report and Recommendation. For the

5   reasons discussed below, the undersigned Magistrate Judge recommends that the District

6   Court deny and dismiss the Petition.

7   **I.   FACTUAL AND PROCEDURAL BACKGROUND**

8        Petitioner is serving an aggregate sentence of 71 years and 4 months imprisonment

9   with a projected release date of August 9, 2065. (Doc. 13 Ex. A Attach. 1).

10       Petitioner filed his pro se Petition under 28 U.S.C. § 2241 for a Writ of Habeas

11  Corpus on March 24, 2020. (Doc. 1). Petitioner alleges four grounds for relief. In Ground

12  One Petitioner asserts that his Fifth Amendment due process rights were violated during

13  disciplinary hearings for ten separate incident reports ("IR") that resulted in the loss of

14  good conduct time and privileges because he was denied a psychological evaluation,

15  exculpatory video evidence, exculpatory inmate witnesses, access to confidential

16  informant and Special Investigation Services ("SIS") files for exculpatory information, and

17  a fair and impartial disciplinary hearing officer ("DHO"). In Ground Two Petitioner alleges

18  the conduct described in Ground One violates the First Amendment and 42 U.S.C. § 1997d.

19  In Ground Three Petitioner alleges the conduct described in Ground One violates the

20  Eighth Amendment and further alleges that he is in imminent danger because of the

21  COVID-19 pandemic and is being denied access to medical care, soap, face masks, gloves,

22  and sanitation supplies. In Ground Four Petitioner alleges his Fifth Amendment rights were

23  violated because he has never received a Segregation Review Official ("SRO") hearing

24  while in the Special Housing Unit ("SHU"). Petitioner admits that he did not exhaust his

25  administrative remedies for any of his claims for relief because prison staff allegedly

26  threatened and harassed him when he requested forms. Petitioner requests that the Court

27  appoint counsel, hold an evidentiary hearing, expunge the IRs listed in Ground One, and

28  appropriate due to Petitioner's failure to exhaust his administrative remedies and that the
Petition should be denied on the merits.

1    order his immediate release from the SHU.

2          This Court previously dismissed Grounds Two and Three of the petition because

3    Petitioner's allegations in those claims relate to his conditions of confinement and thus are

4    not properly raised in a § 2241 petition. *See* Doc. 7 at 2.

5          Respondent argues that the Petition should be denied because Petitioner failed to

6    exhaust his administrative remedies for nine of the ten incident reports that he challenges

7    and that regardless of exhaustion, the Petition is meritless. (Doc. 13).

8          As to Petitioner's due process claim regarding the disciplinary hearings for the ten

9    IRs listed in the Petition, the undersigned finds that Petitioner failed to exhaust his

10   administrative remedies as to eight of the ten IRs and further that Petitioner's claim lacks

11   merit. As to Petitioner's due process claim regarding the alleged denial of an SRO hearing

12   during his placement in the SHU, the undersigned finds that Petitioner failed to properly

13   exhaust this claim and further that the claim lacks merit. Accordingly, for the reasons

14   explained below, the undersigned finds that the Petition should be dismissed.

15   **II.    ANALYSIS**

16          **A. Jurisdiction**

17          "Federal courts are always 'under an independent obligation to examine their own

18   jurisdiction,' and a federal court may not entertain an action over which it has no

19   jurisdiction." *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000) (quoting *FW/PBS,

20   Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). "Generally, motions to contest the legality

21   of a sentence must be filed under § 2255 in the sentencing court, while petitions that

22   challenge the manner, location, or conditions of a sentence's execution must be brought

23   pursuant to § 2241 in the custodial court." *Id.* at 864. Additionally, the judicial power of

24   this and all federal courts is limited to actual cases or controversies. U.S. Const. art. III; *see

25   also Flast v. Cohen*, 392 U.S. 83, 94 (1968); *Munoz v. Rowland*, 104 F.3d 1096, 1097 (9th

26   Cir. 1997). A petition for writ of habeas corpus is moot where a petitioner's claim for

27   "relief cannot be 'redressed by a favorable . . . decision' of the court issuing a writ of habeas

28   corpus." *Burnett v. Lampert*, 432 F.3d 996, 1001 (9th Cir. 2005) (quoting *Spencer v.

*Kenna*, 523 U.S. 1, 7 (1998)). Therefore, a proper characterization of the petition is necessary to determine jurisdiction.

Here, Petitioner alleges that he was denied due process during disciplinary hearing proceedings resulting in loss of privileges and good conduct time and was further denied due process because he never received an SRO hearing while housed in the SHU. As such, Petitioner is challenging the manner, location, or condition of the execution of his sentence. It is well established that a § 2241 petition is the proper vehicle through which a federal prisoner challenges the manner or execution of a sentence. *See, e.g.*, *Hernandez*, 204 F.3d at 864; *Tucker v. Carlson*, 925 F.2d 330, 331 (9th Cir. 1991) (a prisoner's challenge to the "manner in which his sentence was executed . . . [is] maintainable only in a petition for habeas corpus filed pursuant to 28 U.S.C. § 2241").

At the time of filing the Petition, Petitioner was incarcerated at USP—Tucson in Arizona, and the Petition challenges the manner in which Petitioner's sentence was being executed in the District of Arizona. However, Petitioner is presently incarcerated at USP—Thomson. While "jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change[,]" *Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990) (citation omitted), "[d]istrict courts are limited to granting habeas relief 'within their respective jurisdictions.'" *Rumsfeld*, 542 U.S. at 442 (quoting 28 U.S.C. § 2241(a)). Thus, "in habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Id.* at 435. "The court issuing the writ must have personal jurisdiction over the custodian[, because w]ithout such jurisdiction, the court has no authority to direct the actions of the restraining authority." *Malone v. Calderon*, 165 F.3d 1234, 1237 (9th Cir. 1999). Here, the undersigned finds that the Court presumably lacks personal jurisdiction over Petitioner's current custodian at USP—Thomson, which is located in the Northern District of Illinois. *See Singh v. Wolf*, 2020 WL 4455468, at *3 (D. Ariz. Mar. 31, 2020) ("the district court's habeas jurisdiction is limited to the district's

territory, such jurisdiction is determined by personal jurisdiction over the respondent within such territory (without benefit of long-arm service), and the proper respondent is normally the local warden where the petitioner is detained"), *report and recommendation adopted*, 2020 WL 2611208 (D. Ariz. May 22, 2020); *Divine v. Chavez*, 2009 WL 3722994, at *6 (D. Ariz. Nov. 4, 2009) (adopting report and recommendation wherein magistrate judge conducted personal jurisdiction analysis and determined that court lacked personal jurisdiction over Oregon respondent in § 2241 action).

While the Court could transfer this action to any other such court in which the action could have been brought, the undersigned finds that it is not in the interests of justice to transfer this matter. *See Miller v. Hambrick*, 905 F.2d 259, 262–63 (9th Cir. 1990) (holding that § 2241 petition was not moot where jurisdiction existed when petition was filed and applying 28 U.S.C. § 1631 to *sua sponte* order the district court to transfer the petition).[2] An inmate may be transferred to a different institution at any time, and the undersigned is mindful of avoiding a "ping-pong" effect where the § 2241 petition is transferred to a new court each time the petitioner is designated to a new institution. Moreover, as explained below, regardless of whether this action may be considered moot in this Court, the undersigned recommends that the Petition be dismissed for lack of exhaustion and further be denied on the merits.

### B. Exhaustion

#### i. In General

"As a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241." *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). "The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement." *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled*

---

[2] Further, transfer to the Northern District of Illinois would not be appropriate because that court lacked jurisdiction at the time the Petition was filed. *See Cruz-Aguilera v. I.N.S.*, 245 F.3d 1070, 1074 (9th Cir. 2001) ("Transfer is appropriate under § 1631 if three conditions are met: (1) the transferring court lacks jurisdiction; (2) the transferee court could have exercised jurisdiction at the time the action was filed; and (3) the transfer is in the interest of justice.").

*on other grounds by Reno v. Koray*, 515 U.S. 50, 54–55 (1995). "Nevertheless, '[p]rudential limits, like jurisdictional limits and limits on venue, are ordinarily not optional.'" *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006)).

> Courts may require prudential exhaustion if "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review."

*Id*. (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)).

"When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). Courts have discretion to waive the exhaustion requirement "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (citation omitted); *see also Acevedo–Carranza v. Ashcroft*, 371 F.3d 539, 542 n.3 (9th Cir. 2004). A key consideration in exercising such discretion is whether "relaxation of the requirement would encourage the deliberate bypass of the administrative scheme[.]" *Id.* (citation omitted).

If a prisoner is unable to obtain an administrative remedy because of his failure to appeal in a timely manner, then the petitioner has procedurally defaulted his habeas corpus claim. *See Nigro v. Sullivan*, 40 F.3d 990, 997 (9th Cir. 1994). If a claim is procedurally defaulted, the court may require the petitioner to demonstrate cause for the procedural default and actual prejudice from the alleged constitutional violation. *See id.* (citing *Francis*, 894 F.2d at 355 n.2 (suggesting that the cause and prejudice standard is the appropriate test for procedural default of administrative remedies)).

ii.     BOP Administrative Procedures

The BOP has established an Administrative Remedy Program "to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). The formal grievance system under the Administrative Remedy Program consists of three levels of review. *Id.* §§ 542.14–542.15. In the first level of review, an inmate files a formal Administrative Remedy Request written on a BP–9 form. The BP–9 form must be submitted to the Warden within 20 calendar days following the date on which the basis for the request occurred. Second, if an inmate is dissatisfied with the Warden's response, the inmate may submit an appeal on a BP–10 form to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response to the inmate's Administrative Remedy Request. Third, an "inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP–11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response." *Id.* § 542.15(a). The appeal to the General Counsel completes the administrative remedy process.

The deadlines contained within this process may be extended upon request by the inmate and a showing of a valid reason for delay. *Id.* §§ 542.14(b), 542.15(a). Once an appeal is filed, a Regional Director shall respond within 30 days; General Counsel shall respond with 40 days. *Id.* § 542.18. "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." *Id.*

iii.     Exhaustion in the Instant Case

Here, Petitioner admits that he did not exhaust his administrative remedies for any of the grounds in his Petition because prison staff allegedly threatened and harassed him when he asked for forms. Respondent contends that Petitioner's baseless assertion should be given no deference and that the Petition should be denied based on Petitioner's failure to exhaust his administrative remedies. Respondent further notes that the record in fact demonstrates that Petitioner has been able to access the administrative remedy program

and has filed numerous requests, including requests related to two of the IRs that Petitioner challenges in the present case.[3] Thus, the undersigned submits that Petitioner cannot credibly allege that he was unable to exhaust his administrative remedies due to staff retaliation because the record reflects that Petitioner has filed a number of administrative remedy requests during the time period at issue here. (Doc. 13 at 3–5; Ex. A Attach. 2).

The undersigned finds that the use of the administrative remedy process in this case would have allowed the BOP to investigate Petitioner's claims, and, if warranted, correct the alleged errors. While the record demonstrates that Petitioner did pursue administrative requests for two of the IRs that he challenges in his Petition, Petitioner did not file any administrative requests for relief as to the other eight IRs that he challenges, nor has he filed any administrative requests alleging that he has been unable to attend SRO hearings. Thus, Petitioner has not given the BOP's formal administrative levels of review an opportunity to consider these claims. *See Quinonez v. McGrew*, 649 F. App'x 475 (9th Cir. 2016) (affirming district court's dismissal of § 2241 petition for failure to exhaust administrative remedies where petitioner "did not complete any level of the BOP's Administrative Remedy Program and there is no indication that his pursuit of those remedies would be futile"). Furthermore, the BOP's expertise is necessary to generate a proper factual record at the administrative level. *See Puga*, 488 F.3d at 815. As the Ninth Circuit Court of Appeals has recognized:

> [T]he requirement of exhaustion of remedies [is to] aid judicial review by allowing the appropriate development of a factual record in an expert forum; conserve the court's time because of the possibility that the relief applied for may be granted at

---

[3] Respondent concedes that Petitioner's challenge to IR 3316373 may be considered fully exhausted because Petitioner pursued the administrative remedy process to challenge this IR and the time has since expired for the BOP to respond to Petitioner's BP-11. (Doc. 13 at 5); *see* 28 C.F.R. § 542.18.

Respondent contends that while Petitioner also challenged IR 3375374 using the administrative remedy process, that challenge was not fully exhausted because, at the time the Response was filed, it was still pending at the BP-10 level. (Doc. 13 at 6). While neither party has filed an update with the Court as to the status of Petitioner's challenge to IR 3375374, the undersigned finds that the factual record as to this IR is adequately developed and nothing in the record suggests that further administrative review would result in any changes. Thus, giving Petitioner the benefit of the doubt and assuming that he did file a BP-11 to complete the administrative remedy process, Petitioner's challenge to IR 3375374 may be considered fully exhausted.

the administrative level; and allow the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings.

*Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir. 1983).

Accordingly, the undersigned finds that—with the exception of Petitioner's challenges to IR 3316373 and IR 3375374—Petitioner has failed to exhaust his administrative remedies in this matter and exhaustion should not be waived. In light of Petitioner's failure to exhaust, the undersigned therefore recommends that the Petition be dismissed. Moreover, as the undersigned explains below, regardless of whether Petitioner properly exhausted his administrative remedies, the Petition should be denied on the merits.

**C. Merits**

The Ninth Circuit has made clear that jurisdiction over a petition filed pursuant to 28 U.S.C. § 2241 exists in a federal prison setting in three circumstances: (1) when a prisoner "claims that he has been denied good time credits without due process"; (2) when a prisoner claims "that he has been subjected to greater restrictions of his liberty, such as disciplinary segregation, without due process"; and (3) when a prisoner "seeks expungement of a disciplinary finding from his record if expungement is likely to accelerate the prisoner's eligibility for parole." *Bostic v. Carlson*, 884 F.2d 1267, 1269 (9th Cir. 1989), *overruled on other grounds by Nettles v. Grounds*, 830 F.3d 922 (9th Cir. 2016). Thus, a prisoner may only utilize a § 2241 petition when he is challenging the fact or duration of his custody with the traditional remedy being immediate or sooner release from custody. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

Here, Petitioner asserts in Ground One that his due process rights were violated when he was charged in ten separate IRs resulting in multiple disciplinary hearings and sanctioned with loss of good conduct time and privileges. (Doc. 1 at 4). Petitioner contends that during each hearing he was denied: 1) a psychological evaluation, 2) exculpatory video evidence, 3) exculpatory inmate witnesses, 4) "access to confidential informant and SIS investigation files for the exculpatory information contained therein, while the DHO used inculpatory info in such secret files," and 5) a fair and impartial DHO. *Id.* Petitioner further

alleges in Ground Four that his due process rights were violated because he has never received an SRO hearing while housed in the SHU. *Id.* at 7.

i.   Incident Report Disciplinary Proceedings

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). "Due process in a prison disciplinary hearing is satisfied if the inmate receives written notice of the charges, and a statement of the evidence relied on by the prison officials and the reasons for disciplinary action." *Zimmerlee v. Keeny*, 831 F.2d 183, 186 (9th Cir. 1987) (citing *Wolff*, 418 U.S. at 563–66). Additionally, "[t]he inmate has a limited right to call witnesses and to present documentary evidence when permitting him to do so would not unduly threaten institutional safety and goals." *Id.*

The minimal procedural requirements delineated in *Wolff* "are satisfied if some evidence supports the decision by the prison disciplinary board." *Superintendent, Massachusetts Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* Rather, the court must ask "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–56. This "standard is minimally stringent[,]" requiring only that there is "some evidence" to support the final determination of guilt. *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987) (noting that while the Court in *Hill* characterized the evidence as "meager," it "found the record 'not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary'" (quoting *Hill*, 472 U.S. at 457)); *see also Howard v. Copenhaver*, 2015 WL 404092, at *5 (E.D. Cal. Jan. 28, 2015) ("The some evidence standard is a low threshold, and will be met even when evidence to the contrary is presented.").

Here, the record reflects the following:

IR 3310273 (Doc. 13 Ex. A. Attach. 3): On October 1, 2019 this charge was pending investigation, and on November 12, 2019 DHO Cole expunged the charge due to

insufficient evidence. IR 3316384: On October 16, 2019 this charge was pending investigation, and on November 12, 2019 DHO Cole expunged the charge due to insufficient evidence. *Id.* Attach. 4. Thus, in both incidents, Petitioner was not found guilty of any infraction and did not receive any sanctions and therefore has not raised a protectable liberty interest regarding these IRs. *See Darden v. Von Blanckensee*, 2021 WL 6750673, at *3 (D. Ariz. Aug. 16, 2021) (petitioner's claims alleging due process violations in disciplinary hearing were moot where hearing decision and imposition of sanctions was reversed; "[t]hose irregularities, therefore, did not affect [petitioner's] custody, and habeas corpus relief is not available") (citing *Strohmeyer v. Belanger*, 661 F. App'x 471, 473 (9th Cir. 2016) (district court properly dismissed due process claim where result of the disciplinary hearing was overturned on appeal) and *Rodriguez-Puente v. Feather*, 2015 WL 3514173, at *2 (D. Or. 2015) (where findings and sanctions from disciplinary hearing were superseded by the rehearing decision, district court action was moot)), *report and recommendation adopted*, 2022 WL 252393 (D. Ariz. Jan. 27, 2022).

IR 3375374 (Doc. 13 Ex. A. Attach. 5 at 1): On March 9, 2020 Petitioner was found guilty of refusing to obey a staff order and sanctioned with 30 days loss of commissary privileges. IR 3320232: On November 12, 2019 Petitioner admitted guilt to the charge of possessing an unauthorized item and was sanctioned with 180 days loss of commissary privileges. *Id.* at 2. IR 3308988: On October 1, 2019 Petitioner was found guilty of possessing an unauthorized item and sanctioned with 30 days loss of commissary privileges. *Id.* at 3–4. While Petitioner was found guilty in these three IRs, he was only sanctioned with loss of commissary privileges and therefore has failed to raise a protectable liberty interest because he was not sanctioned with loss of good conduct time. *See Wolff*, 418 U.S. at 557 (inmates have protectable liberty interest in good conduct time protected by due process); *Davis v. Small*, 595 F. App'x 689, 691 (9th Cir. 2014) (recognizing that the due process clause does not give rise to a protectable liberty interest in prison privileges); *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (*Wolff's* due process protections only apply when disciplinary action implicates a protected liberty interest).

IR 3316373 (Doc. 13 Ex. A. Attach. 6): Following a hearing on November 12, 2019, DHO Cole found that Petitioner committed the prohibited act of attempt to plan the introduction of narcotics. *Id.* at 1–2. The record shows that Petitioner received written notice of the charges and his rights before the DHO. *Id.* at 9, 78–80. Petitioner made a statement to the DHO denying the charges but did not submit documentary evidence and waived his right to call witnesses. *Id.* at 1–2. Petitioner requested a staff representative who made statements on his behalf. *Id.* at 1. The DHO relied on evidence from an SIS investigation showing Petitioner and another inmate introducing Suboxone into the prison hidden in "legal mail" and Petitioner using another inmate's email account to correspond with his girlfriend regarding the Suboxone. *Id.* at 3–4. The DHO disallowed 41 days of good conduct time credit, placed Petitioner in disciplinary segregation for 30 days, and ordered loss of commissary and visit privileges for 180 days. *Id.* at 4. The record reflects that the DHO's decision was based on "some evidence" (i.e., video surveillance showing Petitioner using another inmate's email account, emails between Petitioner and his girlfriend using coded words to discuss Suboxone, and interviews with other inmates stating that Petitioner started a gang to make money by any means possible, was getting Suboxone sent in the mail using other people's names, was "big in the dope game on the yard," and had a history of getting drugs in at other prisons) and *Wolff's* procedural requirements were met. Therefore, Petitioner was afforded due process.

IR 3310977 (Doc. 13 Ex. A. Attach. 7): Following a hearing on November 12, 2019, DHO Cole found that Petitioner committed the prohibited act of threatening bodily harm. *Id.* at 1–2. The record shows that Petitioner received written notice of the charges and his rights before the DHO. *Id.* at 5, 8, 18. Petitioner made a statement to the DHO denying the charge but did not submit documentary evidence and waived his right to call witnesses. *Id.* at 1–2. Petitioner requested a staff representative who made statements on his behalf. *Id.* at 1. The DHO relied on evidence consisting of a letter Petitioner sent to his girlfriend in which he threatened to punish another inmate. *Id.* at 3. The DHO disallowed 27 days of good conduct time credit and ordered loss of commissary and phone privileges for 90 days.

*Id.* at 3. The record reflects that the DHO's decision was based on "some evidence" (i.e., a copy of the letter Petitioner sent to his girlfriend stating "[inmate] is right next door so all he wants to talk about is you . . . I still think he might've gave your # to that junkie and I'm very seriously contemplating punishing him for his disloyalty") and *Wolff's* procedural requirements were met. *Id.* at 13. Therefore, Petitioner was afforded due process.

IR 3320270 (Doc. 13 Ex. A. Attach. 8): Following a hearing on November 12, 2019, DHO Cole found that Petitioner committed the prohibited act of possession of narcotics. *Id.* at 1–2. The record shows that Petitioner received written notice of the charges and his rights before the DHO. *Id.* at 5, 12, 13. Petitioner made a statement to the DHO admitting his guilt, waived his right to a staff representative, and waived his right to call witnesses. *Id.* at 1–2. The DHO relied on evidence including staff memorandums, photographs, and drug test results showing opiates discovered on small pieces of paper found in Petitioner's cell. *Id.* at 3. The DHO disallowed 41 days of good conduct time credit and ordered loss of commissary and visit privileges for 180 days. *Id.* The record reflects that the DHO's decision was based on "some evidence" (i.e., small pieces of paper found in Petitioner's cell that tested positive for opiates and Petitioner's statement "I'm guilty") and *Wolff's* procedural requirements were met. Therefore, Petitioner was afforded due process.

IR 3320275 (Doc. 13 Ex. A. Attach. 9): Following a hearing on November 12, 2019, DHO Cole found that Petitioner committed the prohibited act of possession of drugs not prescribed for the individual. *Id.* at 1–2. The record shows that Petitioner received written notice of the charges and his rights before the DHO. *Id.* at 5, 10, 11. Petitioner made a statement to the DHO admitting his guilt, waived his right to a staff representative, and waived his right to call witnesses. *Id.* at 1–2. The DHO relied on evidence including staff memorandums and photographs showing Sertraline pills found in Petitioner's cell that were not prescribed to Petitioner or his cell mate. *Id.* at 3. The DHO disallowed 41 days of good conduct time credit and ordered loss of commissary and visit privileges for 180 days. *Id.* The record reflects that the DHO's decision was based on "some evidence" (i.e., Sertraline pills found in Petitioner's cell and Petitioner's statement "I'm guilty") and *Wolff's*

procedural requirements were met. Therefore, Petitioner was afforded due process.

IR 3320288 (Doc. 13 Ex. A. Attach. 10): Following a hearing on November 12, 2019, DHO Cole found that Petitioner committed the prohibited acts of possessing a hazardous tool and destroying property valued at $100 or less. *Id.* at 1–2. The record shows that Petitioner received written notice of the charges and his rights before the DHO. *Id.* at 5, 10, 11. Petitioner made a statement to the DHO alleging his cell mate was responsible, waived his right to a staff representative, and waived his right to call witnesses. *Id.* at 1–2. The DHO relied on evidence including staff memorandums and photographs documenting a butane lighter found hidden in a mattress in Petitioner's cell. *Id.* at 3. Because the mattress was not assigned to a specific inmate and both Petitioner and his cellmate had access to it, both inmates received an IR. The DHO disallowed 41 days of good conduct time credit, placed Petitioner in disciplinary segregation for 15 days, and ordered loss of commissary privileges for 180 days and visit privileges for 30 days. The record reflects that the DHO's decision was based on "some evidence" (i.e., butane lighter found hidden in mattress in Petitioner's cell and Petitioner's statement to the UDC admitting guilt) and *Wolff's* procedural requirements were met. Therefore, Petitioner was afforded due process.

While Petitioner alleges generally that he was denied access to exculpatory information, video evidence, and inmate witnesses, Petitioner provides no further information or evidence to substantiate this claim as to any of the disciplinary proceedings that he challenges. Nor does he specify what material information witnesses would have testified to. Further, there are no references in the DHO's reports indicating that Petitioner wished to have witnesses or to present documentary evidence. Petitioner made statements for every IR proceeding that resulted in loss of good conduct time, either himself or through a staff representative, and waived his right to call witnesses. (Doc. 13 Ex. A. Attach. 6–10). Thus, Petitioner's argument is without merit. He was able to provide a statement and he fails to argue why this was insufficient. *See, e.g.*, *Melnik v. Dzurenda*, 14 F.4th 981, 986 (9th Cir. 2021) ("a prisoner's right to access and prepare evidence for a disciplinary hearing is not unlimited nor unfettered"); *Witkin v. Arnold*, 757 F. App'x 561, 563 (9th Cir. 2018)

("There is no denial of due process in denying a party leave to call witnesses if the party provides no basis in the record demonstrating the witnesses have relevant testimony."); *Allen v. Montgomery*, 2020 WL 5887015, at *18 (C.D. Cal. July 28, 2020) ("A prisoner's right to call witnesses and present documentary evidence at a disciplinary proceeding is not absolute."), *report and recommendation adopted*, 2020 WL 5989187 (C.D. Cal. Oct. 8, 2020); *see also Melnik*, 14 F.4th at 990–92 (Bennet, J., dissenting) (agreeing with majority's opinion that inmates have a qualified right to access the prison's evidence against them in a disciplinary proceeding, but rejecting majority's suggestion that *Wolff* "implicitly recognized a prisoner's right to compile evidence in his defense" and finding that neither the Supreme Court's decision in *Wolff* nor any other published Ninth Circuit case clearly establishes a prisoner's right to access the prison's evidence).

Petitioner further alleges that he was denied a psychological evaluation pursuant to 28 C.F.R. § 541.6 in each of the disciplinary proceedings that he challenges.[4] However, Petitioner does not argue that he has an independent liberty interest in a psychological evaluation based on the regulation, and the Supreme Court has never held that inmates have a due process right to psychological evaluations in prison disciplinary proceedings. *See Wolff*, 418 U.S. 539. The Fifth Amendment provides different standards than BOP

---

[4] This regulation pertains to mentally ill inmates and the inmate discipline program and provides that:

> If it appears you are mentally ill at any stage of the discipline process, you will be examined by mental health staff.
>
> (a) Competency to Participate in Disciplinary Proceedings. If evidence indicates that you cannot understand the nature of the disciplinary proceedings, or cannot help in your own defense, disciplinary proceedings may be postponed until you are competent to participate. The Unit Disciplinary Committee or Discipline Hearing Officer will make this decision based on evidence, including evidence presented by mental health staff.
>
> (b) Responsibility for Conduct. You will not be disciplined for conduct committed when, as the result of a severe mental disease or defect, you were unable to appreciate the nature and quality, or wrongfulness of the act. The UDC or DHO will make this decision based on evidence, including evidence presented by mental health staff.

28 C.F.R. § 541.6.

regulations, *Waters v. Von Blanckensee*, 2020 WL 6816359, at \*5 (D. Ariz. Sept. 29, 2020), *report and recommendation adopted*, 2020 WL 6802482 (D. Ariz. Nov. 19, 2020), and "[a] habeas claim cannot be sustained based solely upon the BOP's purported violation of its own program statement because noncompliance with a BOP program statement is not a violation of federal law." *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011); *see also Smith v. Apker*, 2014 WL 1515145, at \*5 (D. Ariz. Apr. 18, 2014) ("a violation of a Bureau of Prisons' regulation does not rise to a due process violation"). Further, Petitioner does not assert that he was incompetent during the disciplinary proceedings or that the lack of evaluation resulted in any harm. Even assuming that the hearings were so complex that Petitioner could not adequately comprehend the issues, Petitioner would then have been entitled to seek assistance. In IRs 3316373 and 3310977, Petitioner requested and received a staff representative. (Doc. 13 Ex. A. Attach. 6 & 7). In IRs 3320270, 3320275, and 3320288, he waived a staff representative. *Id.* Attach. 8–10. He does not claim he was unable to seek assistance. Thus, Petitioner's claim lacks merit.

Finally, while Petitioner alleges that he was denied a fair and impartial DHO, Petitioner again fails to provide anything in support of this claim other than his own unsubstantiated statements. "[D]ue process is satisfied as long as no member of the disciplinary board has been involved in the investigation or prosecution of the particular case, or has had any other form of personal involvement in the case." *Wolff*, 418 U.S. at 592 (Marshall, J., concurring). Here, the record reflects that the DHO who heard each of Petitioner's IRs was not an investigating or reviewing officer and had no personal knowledge of the subject incident. Petitioner's unsupported accusation that SIS Tech. Gallion declared "that he intended to 'target and destroy' all of the 'inmates filing lawsuits and grievances in my prison'" and that the DHO admitted "I have no choice but to find you all guilty, this is a paper war[,]" is insufficient to state a due process violation. (Doc. 1 at 4).

In sum, the record before the Court indicates that in each IR disciplinary hearing, Petitioner received written notice of the charges, had the opportunity to call witnesses and

present documentary evidence, had a staff representative when requested, and received a statement of the evidence relied on by the prison officials and the reasons for disciplinary actions. The DHO considered Petitioner's statements, the written and verbal statements of other inmates, the staff representative statements, written reports and other supporting memoranda, and video and photographs of the incidents. In each case, the DHO found that, based on the weight of the evidence, Petitioner committed the prohibited act. The requirements of due process are satisfied if "there [is] some evidence from which the conclusion of the administrative tribunal could be deduced . . . ." *Hill*, 472 U.S. at 455 (citation omitted). Here, during each disciplinary proceeding, the DHO considered and weighed the evidence in reaching his conclusion. The undersigned thus finds that there is "some evidence" to support the DHO's findings and that Petitioner received the requisite due process. *See Cato*, 824 F.2d at 705.

Further, Petitioner offers no reason to think that he might have been found not guilty of the charged violations if he had been afforded more generous procedural benefits during the DHO proceedings and thus cannot show prejudice. *See Allen v. von Blanckensee*, 2019 WL 3308518, at *2 (D. Ariz. June 26, 2019) (finding that even if petitioner's allegations that he was prevented from requesting witnesses and presenting evidence were true, petitioner could not establish a due process violation because he failed to establish proof of prejudice), *report and recommendation adopted*, 2019 WL 3307006 (D. Ariz. July 23, 2019); *Tien v. Sisto*, 2010 WL 1236308, at *4 (E.D. Cal. Mar. 26, 2010) ("While neither the United States Supreme Court or the Ninth Circuit Court of Appeals has spoken on the issue, numerous federal Courts of Appeals, as well as courts in this district, have held that a prisoner must show prejudice to state a habeas claim based on an alleged due process violation in a disciplinary proceeding."); *Adams v. Fed. Bureau of Prisons*, 2011 WL 7293381, at *2 (D. Minn. Dec. 6, 2011) ("On a repeated and consistent basis, federal courts hold that in prison disciplinary cases, '[e]ven if a prison official's actions create a potential due process violation, a habeas petitioner needs to demonstrate that he was harmed by the violation in order to obtain relief.'" (citation omitted)), *report and recommendation*

1   *adopted*, 2012 WL 503798 (D. Minn. Feb. 14, 2012). Thus, to the extent any procedural

2   errors did occur during the DHO disciplinary proceedings, any error was harmless, as

3   Petitioner has offered no reason to believe that any such errors affected the outcome of the

4   proceedings.

5   In light of the foregoing, the undersigned finds that the due process requirements

6   delineated by *Wolff* were met in this case. Additionally, the undersigned finds that "some

7   evidence" supports the DHO's findings and "the record is not so devoid of evidence that

8   the findings of the disciplinary board were without support or otherwise arbitrary." *Hill*,

9   472 U.S. at 457. Accordingly, the undersigned recommends that the District Court deny

10  Petitioner's Ground One claim.

11                      ii.    Special Housing Unit

12  Pursuant to BOP regulations, an inmate may be placed in administrative detention

13  status within the SHU where the inmate's "presence in the general population poses a threat

14  to life, property, self, staff, other inmates, the public, or to the security or orderly running

15  of the institution" and: (1) the inmate is under investigation or awaiting a hearing for

16  possible violation of a BOP regulation or criminal law; (2) the inmate is pending transfer

17  to another institution or location; (3) administrative detention status is required for the

18  inmate's protection; or (4) the inmate is ending confinement in disciplinary segregation

19  and the inmate's return to the general population would threaten the safety, security, and

20  orderly operation of the facility. 28 C.F.R. § 541.23(c). Once placed in administrative

21  detention, BOP regulations provide that the inmate will have periodic reviews by an SRO

22  as follows: within 3 work days, the SRO will review the supporting records; within 7

23  continuous calendar days, the SRO will formally review the inmate's status at a hearing

24  the inmate can attend; and after every 30 calendar days of continuous placement, the SRO

25  will formally review the inmate's placement at a hearing the inmate can attend. 28 C.R.F.

26  § 541.26.

27  In *Moody v. Daggett*, the Supreme Court noted in dicta that prisoner classification

28  and eligibility for rehabilitative programs in the federal system are matters delegated by

Congress to the "full discretion" of federal prison officials. 429 U.S. 78, 88 n.9 (1976). Further, inmates have no "legitimate statutory or constitutional entitlement sufficient to invoke due process" regarding their classification. *Id.* Thus, "a prisoner has no constitutional right to a particular classification status," *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987), and prisoners have "no right to be at any particular prison" *Grayson v. Rison*, 945 F.2d 1064, 1067 (9th Cir. 1991). "Inmates [do] have a protected liberty interest under the Fifth Amendment to be free from conditions of confinement which 'impose[ ] atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" *Waters*, 2020 WL 6816359 at *5 (second and third alterations in original) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "Generally, administrative segregation does not impose an atypical and significant hardship." *Id.* (citing *Toussaint v. McCarthy*, 801 F.2d 1080, 1091 (9th Cir. 1986) ("[T]he due process clause does not of its own force create a liberty interest in freedom from administrative segregation."), *abrogated in part on other grounds by Sandin*, 515 U.S. at 482–83; *Serrano*, 345 F.3d at 1078 (collecting cases and stating that "[t]ypically, administrative segregation in and of itself does not implicate a protected liberty interest"); and *Sandin*, 515 U.S. at 486 (holding that disciplinary segregation "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest")).

Here, Petitioner's Ground Four SHU claim is akin to a challenge on a prisoner's classification, which is not cognizable in a habeas petition. *See Davidson v. McClintock*, 2014 WL 2921900, at *1 (D. Ariz. June 27, 2014) ("Claims which pertain to prisoner's classifications, especially individual custodial classification scores, are not cognizable in a federal habeas petition.") (citing *Franklin v. Gipson*, 2013 WL 1339545, at *2 (C.D. Cal. Feb. 19, 2013) (court lacked habeas jurisdiction over challenge to classification status because remedy would not necessarily shorten the petitioner's sentence—the inmate "would not be released from confinement or even be provided with a lesser term of confinement; rather, at most, he would receive a different or lower classification score") and *Lerma v. Gutierrez*, 2012 WL 1320145, at *3 (C.D. Cal. Mar. 7, 2012) (finding the

same and noting that inmates have no protected liberty interest in "security classifications and housing designations, which are unambiguously and explicitly within the sole discretion of the BOP")). Nor does Petitioner's placement in administrative detention constitute an "atypical and significant hardship" such that a protected liberty interest is implicated. As the Ninth Circuit has explained:

> When prison officials have legitimate administrative authority, such as the discretion to move inmates from prison to prison or from cell to cell, the Due Process Clause imposes few restrictions on the use of that authority, regardless of any additional motives which are claimed to exist. It doesn't matter what label is placed on the action or what other reasons may be behind it; nor is it relevant that the conditions of confinement may become less pleasant as a result. We must allow prison officials the freedom to exercise their administrative authority without judicial oversight. Some administrative actions will inevitably make prisoners feel cheated; nevertheless, this does not give them a federal cause of action.

*Grayson*, 845 F.2d at 1067; *see also Sandin*, 515 U.S. at 485 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law.").

Furthermore, even had Petitioner established a protected liberty interest, the record shows that he received due process. In the context of administrative segregation, due process requires that prison officials (1) "hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated," (2) "inform the prisoner of the charges against the prisoner or their reasons for considering segregation," and (3) "allow the prisoner to present his views." *Toussaint*, 801 F.2d at 1100 ("the value of *Wolff*-type procedures [is] minimal in the context of the decision to segregate a prisoner for administrative reasons[,] . . . [where t]he judgment of prison officials . . . turns largely on purely subjective evaluations and on predictions of future behavior" (internal quotations and citation omitted)). Petitioner received notice of the reasons for being segregated, i.e., a pending SIS investigation. (Doc. 13 Ex. A Attach. 12). Petitioner received regular reviews of his detention status: BOP staff held weekly reviews every 7 days, *id.* Attach. 13 at 2–7; Petitioner attended review hearings on November 6 and 29, 2019, January 28, 2020,

- 20 -

and February 27, 2020, *id.* at 1–2, 4–5; and Petitioner waived his right to appear at the review hearings on December 30, 2019, April 28, 2020, and May 28, 2020, *id.* at 3, 6–7. Presumably, Petitioner could present his views during these hearings. Petitioner also received a written copy of the reasons for his continued detention after every 30-day hearing. *See* Attach. 13. Although Petitioner asserts that he has never received an SRO hearing, in light of the evidence documenting the review process, the undersigned rejects this assertion as incredible.

Finally, to the extent that Petitioner alleges his hearings have not occurred precisely within the time limits set forth by the BOP regulations, "[a] habeas claim cannot be sustained based solely upon the BOP's purported violation of its own program statement because noncompliance with a BOP program statement is not a violation of federal law." *Reeb*, 636 F.3d at 1227. "Moreover, the relevant inquiry is not whether the prison complied with its own regulations, but whether [the inmate] was provided with process sufficient to meet the [applicable] standard." *Smith*, 2014 WL 1515145 at *5 (internal quotations and citation omitted). Here, while the record contains no documentation of a 30-day hearing in March 2020, the record nonetheless shows that Petitioner's initial 7-day hearing occurred within the time prescribed by the regulations and that he has received periodic review of his detention status since then. *See Hewitt v. Helms*, 459 U.S. 460, 476 n.8, 477 n.9 (1983) (when an inmate is transferred to administrative segregation, due process requires only that a review hearing occur "within a reasonable time following an inmate's transfer," and that "some sort of periodic review" occur thereafter), *overruled on other grounds by Sandin*, 515 U.S. 472; *Bostic*, 884 F.2d at 1270 (failure to comply with a regulation stating that a disciplinary hearing will be held within a certain time period does not alone constitute a denial of due process).

In light of the foregoing, the undersigned finds that Petitioner has not established a legitimate statutory or constitutional entitlement regarding his classification status or placement in the SHU. To the extent that Petitioner does have a protected liberty interest, the record shows that he received due process in accordance with the requirements set forth

in *Toussaint* and has received periodic review of his detention status in accordance with BOP regulations. Accordingly, the undersigned recommends that the District Court deny Petitioner's Ground Four claim.

## III.   RECOMMENDATION

For the reasons delineated above, the Magistrate Judge recommends that the District Judge enter an order:

(1)   **SUBSTITUTING** Andrew Ciolli, Warden, as Respondent for Barbara Von Blanckensee pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and Rule 43(c)(2) of the Federal Rules of Appellate Procedure; and

(2)   **DENYING** and **DISMISSING** Petitioner's Petition under 28 U.S.C. § 2241 for a Writ of Habeas Corpus. (Doc. 1).

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). No replies shall be filed unless leave is granted from the District Court. If objections are filed, the parties should use the following case number: **CV-20-139-TUC-JAS**

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review. The Clerk of the Court shall send a copy of this Report and Recommendation to all parties. To ensure that Petitioner receives a copy of this Report and Recommendation, the Clerk's Office shall mail Petitioner a copy of the Report and Recommendation at his current address:

USP Thomson

U.S. Penitentiary

P.O. Box 1002

Thompson, IL  61285

. . .

Dated this 4th day of March, 2022.

Eric J. Markovich
United States Magistrate Judge